**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-02542-NYW

MICHAH COLLINS,

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

     This civil action arises under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c), for review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Michah Collins's ("Plaintiff" or "Mr. Collins") application for Supplemental Security Income benefits ("SSI"). Pursuant to the Parties' consent [Doc. 15], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [Doc. 18]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

     Mr. Collins, born August 22, 1974, alleges he became disabled on January 1, 2018, at 43 years-of-age, due to physical issues with his back and "[m]ental problems."[1] *See* [Doc. 14-6 at

---

[1] Plaintiff does not appeal the ALJ's findings as to Plaintiff's physical impairments. *See* [Doc. 18]. Accordingly, the court will address Plaintiff's physical impairments in this order only to the extent relevant to the court's determination.

202, 215].[2]  Mr. Collins alleges he stopped working on June 5, 2016 because of his conditions. [*Id.* at 215].  Given his various ailments, Mr. Collins filed his application for SSI on May 16, 2018. [Doc. 14-5 at 190–95].

Relevant to the instant appeal, on August 13, 2018, William Graham, M.D., P.C., conducted a consultative examination of Plaintiff at the request of the agency.  *See* [Doc. 14-7 at 268–72].  Dr. Graham specializes in adult and child psychiatry, and is certified by the American Board of Psychiatry and Neurology in Psychiatry and Child Psychiatry.  [*Id.* at 268].  Mr. Collins reported problems with depression, anxiety, schizoaffective disorder, and PTSD.  [*Id.* at 268–69]. He "denie[d] having manic sorts of symptoms, except for mood swings" and also reported problems "with memory and concentration, being distractible, disorganized, forgetful, and under achieving," as well as auditory and visual hallucinations.  [*Id.* at 269].  Mr. Collins also reported that his issues "began with the death of his father, who was shot and killed when the claimant was in the home, and when he was framed for murder, at age 14," and that the issues affect "his ability to work, and to form and maintain relationships with others."  [*Id.*].

Dr. Graham's diagnostic impression of Plaintiff included major depressive order, general anxiety disorder, and "R/O PTSD."  [*Id.* at 271].  Dr. Graham opined that Plaintiff "would have a mild impairment in his ability to understand, remember, and carry out instructions."  [*Id.* at 272]. Additionally, Plaintiff would also have moderate impairments in concentration, persistence, and pace; social functioning and interacting with coworkers, supervisors, and the public; and adaptive functioning, dealing with the usual stresses associated with employment, and completing a normal

---

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the court cites to the document and page number generated by the CM/ECF system.

workday without interference from his psychiatric symptoms, and without requiring additional supervision. [*Id.*].

On August 27, 2018, Disability Determination Services ("DDS") psychologist Gayle Frommelt, Ph.D., reviewed Mr. Collins's treatment records and opined that Plaintiff had moderate limitations in his abilities to understand, remember, and carry out detailed instructions; work and interact with others; interact with the public; and set realistic goals or make plans independently of others. [Doc. 14-3 at 108–09]. She also indicated that Plaintiff could follow simple instructions, sustain ordinary schedules, and make simple work-related decisions, [*id.* at 108]; as well as respond appropriately to supervision and workers and adapt appropriately to routine changes in the workplace, [*id.* at 109].

The Social Security Administration initially denied Mr. Collins's application administratively on August 29, 2018. *See* [Doc. 14-4 at 114]. Mr. Collins submitted a request for a hearing before Administrative Law Judge Scott A. Bryant (the "ALJ") on September 11, 2018. *See* [*id.* at 118; Doc. 14-2 at 15]. The ALJ conducted two hearings. At the first hearing on October 24, 2019, Mr. Collins, who appeared without attorney representation, reported that he had "mental stuff," including "PTSD, schizoaffective, anti-social behavior disorder, and a psychotic disorder." [Doc. 14-2 at 80–81]. The ALJ ultimately postponed the first hearing to allow Mr. Collins the opportunity to retain an attorney or a specialist to help bring his case. [*Id.* at 69, 83].

The ALJ conducted the second hearing on March 10, 2020. At that hearing, Plaintiff's counsel requested that the ALJ order a second consultative examination for Plaintiff on the basis that Plaintiff had "an enormous and untreated history of mental health issues" and "the only relevant exhibit that really goes into any depth about it" was the consultative examination and corresponding report by Dr. Graham, which Plaintiff's counsel asserted was completed "almost

four years" before Plaintiff filed his application.  *See* [Doc. 14-2 at 39–40].  The ALJ denied the

request.  [*Id*. at 40].  In addition, Plaintiff testified that he previously received mental health

treatment, but had recently been trying to manage his mental health issues through his faith.  [*Id*.

at 45–46].  Plaintiff also testified that he no longer experienced episodes where he would react to

situations "with a lot of violence and volatility" in a way that other people would not typically

react; that he still experienced "a little bit" of audio and visual hallucinations, and that he had not

used methamphetamine in the last year.  [*Id*. at 46, 48].  Further, Plaintiff testified that he was able

to record gospel music out of a recording studio in his garage, and his music was popular in the

United Kingdom.  [*Id*. at 50–53].

The ALJ also received testimony Vocational Expert Robin Cook (the "VE") at the hearing.

*See* [Doc. 14-2 at 53–61]; *see also* [Doc. 14-6 at 262–64].  The VE testified that a hypothetical

individual (with Plaintiff's age, education, and work experience) who could perform *light* work,

and subject to various mental limitations—including performing simple and routine tasks, adapting

to routine workplace changes that do not require complex judgment or analysis, maintaining

frequent interactions with supervisors and coworkers and occasional interactions with the public—

would be able to find a position that he could successfully perform.  [Doc. 14-2 at 54–55].  The

VE identified the following three positions, each of which is a light job with a specific vocational

preparation ("SVP")[3] of 2: (1) Photocopy Machine Operator; (2) Bakery Worker Conveyor Line;

and (3) Office Helper.  [*Id*. at 55].  The VE also testified that, with respect to the interactions

---

[3] SVP refers to the "time required by a typical worker to learn the techniques, acquire the
information, and develop the facility needed for average performance in a specific job-worker
situation."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of
Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The
higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job.
Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL
PROFESSION 163 (Fig. 10-8) (2003).

involved in training for those positions, a hypothetical individual (with Plaintiff's age, education, and work experience) who is "unable to sustain supervision, focus, and interaction with his peers" would not be employable in the national economy.  [*Id*. at 60–61].

On March 31, 2020, the ALJ issued a Notice of Decision denying Plaintiff's application for SSI (the "Decision").  [Doc. 14-2 at 13–29].  The ALJ concluded the following:

1. Mr. Collins had not engaged in substantial gainful activity since May 16, 2018, the application date;

2. Mr. Collins had the severe impairments of anxiety, depression, mild degenerative disc disease of the cervical spine, and obesity;

3. Mr. Collins had no impairment or combination of impairments that met or medically equaled a listing;

4. Mr. Collins had the residual functional capacity ("RFC") to perform light work, subject to the limitations that he could perform simple and routine tasks, he is not capable of complex judgment or analysis in the workplace, he is able to maintain pace in a work environment of a simple and routine nature, he is able to frequently interact with supervisors and coworkers, he is able to occasionally interact with the public, and he is able to adapt to routine changes in the workplace in that such changes do not require complex judgment or analysis in order for him to successfully make that adaptation; and

5. Mr. Collins had the ability to perform other jobs that existed in the national economy.

[Doc. 14-2 at 18–26].  With respect to the severity of Mr. Collins's mental impairments, the ALJ determined that those impairments did not meet or medically equal a listing.  [*Id*. at 19].  Though believing Mr. Collins's mental impairments could reasonably be expected to cause some of the alleged disabling symptoms, the ALJ explained that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  [*Id*. at 23].  For instance, the ALJ noted Mr. Collins's hearing testimony, including that:

- he used to treat his mental conditions, but then tried to manage them through his faith;

- he does not react violently to things, but he does experience audio and visual hallucinations;

- he had not used methamphetamine the last year, he lives wherever he can find a place, including a shelter that he left and, at the time of the hearing, a friend's place in Arvada;

- he recorded gospel music, people in the United Kingdom love his music, and, before he stopped recording, Mr. Collins would spend time recording whenever he felt like it, typically every other day.

[*Id*. at 22–23 (citations omitted)]. Further, in assessing the severity of Mr. Collins's mental impairments and his mental RFC, the ALJ considered the opinions of Dr. Graham and Dr. Frommelt, among other information in the record, including Plaintiff's prior reports regarding his symptoms. [*Id.* at 24–26].

Mr. Collins requested Appeals Council review of the ALJ's decision, which the Appeals Council denied on June 25, 2020, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1]. Mr. Collins then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on August 24, 2021. [Doc. 1]. Because this matter is ripe for consideration, I consider the Parties' arguments below.

## LEGAL STANDARDS

SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant

must establish that he was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments:

the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Plaintiff challenges (1) the ALJ's step two determination that "found only anxiety and depression as [Plaintiff's] severe impairments" while disregarding Plaintiff's "concerns about his PTSD, antisocial personality disorder and schizophrenia," [Doc. 18 at 6]; and (2) the RFC assessment because the ALJ failed to account for the limitations imposed by those conditions, [*id.*]. Plaintiff also asserts that because the ALJ failed to order a consultative examination, he lacked "substantial evidence supporting his mental health diagnoses" in determining that Plaintiff was not disabled at step five. *See* [Doc. 18 at 1–2, 8].

In response, the Commissioner argues that "substantial evidence supports the ALJ's finding that Plaintiff could perform unskilled work with limited social interaction" and the ALJ sufficiently explained and supported his reasons for his weighing of the medical source opinions and ultimate RFC findings. *See* [Doc. 21 at 1 (stating the ALJ's finding "that Plaintiff could perform unskilled work with limited social interaction" is consistent with the evidence from Dr. Graham and Dr. Frommelt, which shows that "while Plaintiff had severe mental health impairments, they did not cause more than moderate limitations.")]. The Commissioner also asserts that Plaintiff's argument regarding Dr. Graham's purportedly outdated consultative examination of Plaintiff's is based on incorrect information—namely, that Dr. Graham did not conduct the consultative examination in 2016, as Plaintiff claims. Rather, Dr. Graham's examination occurred on August 13, 2018, three months after Plaintiff filed his application for SSI benefits. [*Id*. at 5–6].

For the following reasons, I respectfully conclude that the ALJ's determination was sufficient and should be affirmed.

## I.     Step Two

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only *medically determinable impairments* (severe or

not) at subsequent steps.  *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").

Here, the ALJ concluded at step two that Plaintiff had the severe mental impairments of anxiety and depression.  [Doc. 14-2 at 18].  Plaintiff argues that the ALJ erred at step two by disregarding Plaintiff's "concerns about his PTSD, antisocial personality disorder and schizophrenia," [Doc. 18 at 6].  Plaintiff asserts that the ALJ's error in this regard negatively impacted the ALJ's analysis at later steps and constitutes reversible error.  *See* [*id.* at 6–9].  Any such error in this regard, however, is harmless.

In *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew.  813 F.3d 1326, 1330 (10th Cir. 2016).  "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe."  *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-cv-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two ... the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's

other impairments were severe.").  As mentioned, the ALJ found two severe mental impairments and "proceeded with the analysis as required." *Troe v. Berryhill*, No. 16-cv-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330).  Thus, the ALJ did not err at step two by failing to find any further severe impairments.

### A.    Developing the Record

Plaintiff also argues that the ALJ erred by failing to develop the record regarding Plaintiff's PTSD, antisocial personality disorder, and schizophrenia.  *See* [Doc. 18 at 6].  Specifically, Plaintiff argues that the ALJ's reliance on Dr. Graham's opinion from Plaintiff's consultative examination was misplaced, arguing that the examination was completed "[i]n 2016," which "predated his application for disability, but no further consultative examination was ordered during this application."  [*Id*. at 4 (emphasis added)].  Plaintiff contends that the ALJ should have ordered a second consultative examination to further consider "relevant evidence of additional severe impairments."  *See* [*id*. at 7–8].  At the administrative hearing, Plaintiff's counsel also requested that the ALJ order a second consultative examination for Plaintiff on the basis that Plaintiff had "an enormous and untreated history of mental health issues" and "the only relevant exhibit that really goes into any depth about it" was the consultative examination and corresponding report by Dr. Graham, which Plaintiff's counsel similarly asserted was completed "almost four years" before Plaintiff filed his application.  *See* [Doc. 14-2 at 39–40].  The ALJ denied the request.  [*Id*. at 40].

In general, an ALJ has "broad latitude" in deciding whether to order a consultative examination.  *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (unpublished) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)).  While a consultative examination is not necessary "when the ALJ has enough information to make a disability determination," one "may be required if there is a direct conflict in the medical evidence, the medical evidence is

inconclusive, or additional tests are required to explain a diagnosis." *Id.* (internal quotation marks omitted).   In cases where a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case.... [and] to identify the issue or issues requiring further development." *Hawkins,* 113 F.3d at 1167.   However, even when "the current state of the record suggests that a consultative exam may be necessary, we leave the decision whether to order a consultative exam up to the ALJ." *Madrid v. Barnhart*, 447 F.3d 786, 792 (10th Cir. 2006).

Plaintiff argues that a "conflict" exists in this case (1) "because of the outdated 2016 consultative examination" and (2) because Dr. Frommelt opined that Plaintiff had "mild and moderate limitations" but did not diagnose "severe mental health impairments like antisocial personality disorder or schizophrenia" even though Plaintiff's treatments records "document these conditions and specifically note concerns from those physicians about the status of his mental health."   [Doc. 18 at 6–7 (emphasis added)].   The court will address each of these arguments in turn.

First, the record does not support Plaintiff's argument that Dr. Graham's consultative examination was performed in 2016 and, therefore, "outdated."   To the contrary, and as Defendant correctly points out, the record reflects that Dr. Graham conducted Plaintiff's consultative examination on August 13, 2018—nearly three months *after* Plaintiff filed his application for SSI. *See* [Doc. 14-7 at 268]; *see also* [Doc. 21 at 6 n.4].

Second, Plaintiff's assertions that his treatment records document his "severe mental health impairments like antisocial personality disorder or schizophrenia" and the general "status of his mental health," [Doc. 18 at 7], do not warrant reversal of the ALJ's decision.   Specifically, Plaintiff points to records from the Aurora Medical Center which noted Plaintiff's history of PTSD,

psychotic disorder, antisocial personality disorder, and schizoaffective disorder. [*Id*. at 4]; *see also* [Doc. 14-8 at 507]. Plaintiff also contends that his records from Denver Health and St. Anthony North Health Campus ("St. Anthony") also mention diagnoses of antisocial personality disorder and mood disorder. [Doc. 18 at 4]; *see also* [Doc. 14-7 at 324, 441]. Further, Plaintiff references from the emergency room doctor from St. Anthony, who opined as to Plaintiff's gastroparesis[4] that he "wonder[ed] how significantly his underlying Psych issues" contributed to Plaintiff's "multiple problems (for instance illness anxiety disorder, care seeking type)," [Doc. 14-7 at 446]. [Doc. 18 at 4–5]. With respect to Plaintiff's purported mood disorder, the emergency room doctor also opined that he had "[o]ngoing concerns about mental health" and concerns about "conversion disorder vs illness anxiety disorder with care-seeking vs factitious/malingering." [Doc. 14-7 at 447]; *see also* [Doc. 18 at 5]. The same doctor also documented that Plaintiff

> reports depressed mood related to his pain, he has a flat affect but also has strange laughter at seemingly inappropriate times. Does not appear to be responding to internal stimuli. Speech is overall normal although sometimes is delayed and also tangential. Behavior is overall wnl. Thoughts seems wnl and goal oriented although sometimes scattered and recently has been fixated on prior diagnoses. Tearful at times.

[Doc. 14-7 at 449].

Plaintiff argues that despite the foregoing references to his mental impairments, *see* [Doc. 18 at 4–5], the ALJ discounted Plaintiff's "mental health concerns … based on [his] lack of veracity and the lack of supporting medical evidence." [*Id*. at 5]. Relatedly, Plaintiff also argues that his counsel was "explicit" at the administrative hearing that Plaintiff "believed his mental health impairments rose to the level of a section 12.00 listed impairment." [*Id*. at 7]. In response, the Commissioner argues that Plaintiff's reliance on "explicit" statements by his counsel at the

---

[4] This medical diagnosis is not at issue in his appeal. *See* [Doc. 18].

administrative hearing that Plaintiff's medical impairments equal a listing does not create a conflict in this case.  [Doc. 21 at 7 (quotations omitted)]; *see also* [Doc. 18 at 9].  The Commissioner also argues that the "scant references" to PTSD and antisocial personality disorder in the record are from Plaintiff's past medical history or his own self-reports, and do not establish a conflict that warrants an additional consultative examination.  [Doc. 21 at 7–8].

The court finds that Plaintiff has not shown that the ALJ committed reversible error by failing to order a consultative examination.  First, as noted above, the ALJ relied on Dr. Graham's consultative examination of Plaintiff, which occurred almost three after Plaintiff filed his SSI application.  Second, testimony from Plaintiff's counsel that Plaintiff's mental impairments meet a section 12.00 listing, standing alone, cannot establish the existence of a disability.  *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) ("There is no medical evidence in the record to support Claimant's allegations of disabling pain. Claimant's testimony alone cannot establish the existence of disabling pain.").

Third, as explained in greater detail below, there is no indication that the ALJ lacked sufficient information to evaluate Plaintiff's RFC based on the record before him, and the assessment expressly accounted for Plaintiff's reporting "a number of mental health symptoms, including audio and visual hallucinations, paranoia, irritability, … isolation," and that Plaintiff had "experienc[ed] some traumatic events in his life."  *See* [Doc. 14-2 at 24]; *see also Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need to further develop the record" where there was already record evidence concerning the plaintiff's daily activities and physical abilities and "no evidence ... suggesting that his mental impairment had any greater effect on [the plaintiff's] ability to work").  Plaintiff therefore has not shown that the ALJ committed reversible error by failing to order a consultative examination.  *See Hart v. Berryhill*, No. 17-cv-00590-PAB, 2019

WL 1434619, at *5 (D. Colo. Mar. 31, 2019).  *Compare Terrell v. Berryhill*, No. 16-cv-02566-MEH, 2017 WL 1352275, at *7 (D. Colo. Apr. 13, 2017) (noting that "the ALJ was not required to order a consultative examination 'solely to determine if the Plaintiff had fibromyalgia in addition to another medically determinable impairment that could account for her symptoms'" (internal brackets and ellipsis omitted) (quoting SSR 12-2p, 2012 WL 3104869, at *4 (July 25, 2012)) *with* SSR 12-2p, 2012 WL 3104869, at *4 (stating that the SSA "may purchase a [consultative examination] to help [it] assess the severity and functional effects of medically determined [fibromyalgia] or any other impairment(s)") *and Thompson*, 987 F.2d at 1491 (holding that the ALJ "should have exercised his discretionary power to order a consultative examination" where the record did not contain any evidence upon which to make a finding as to RFC).

Finally, to the extent Plaintiff argues that the ALJ failed to consider Plaintiff's PTSD, antisocial personality disorder, and schizophrenia at Step 3, I find that such failure also does not constitute a basis for reversal.  The ALJ concluded at step 3 that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal a listing the criteria of listings 12.04 for depressive, bipolar and related disorders and 12.06 for anxiety and obsessive-compulsive disorders."  [Doc. 14-2 at 19].  In reaching this determination, the ALJ considered the criteria in paragraphs B and C of the listings and found that the evidence showed only moderate limitations in Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself.  [*Id*. at 20].  The ALJ also found there was no evidence "of marginal adjustment, defined as the minimal capacity to adapt to changes in the claimant's environment or to demands not already part of his daily life based on the claimant's abilities."  [*Id*. at 20].  In addition, Plaintiff does not assert that the ALJ failed to consider the proper listings in evaluating Plaintiff's anxiety and depression, and

makes no argument that his purported PTSD, antisocial personality disorder, and schizophrenia would have been evaluated under a listing other than Listings 12.04 and 12.06 at the time of the ALJ's decision.  *See Weigel v. Astrue*, 425 F. App'x 706, 707 (10th Cir. 2011) (unpublished) (noting that ALJ considered claimant's three severe impairments – mood disorder, PTSD, and panic disorder – under Listings 12.04 and 12.06).

### B.    The RFC Assessment – Weighing the Medical Opinions

Plaintiff also indicates that the ALJ erred by failing to properly analyze the combined effect of Plaintiff's mental impairments in formulating the RFC.  *See* [Doc. 18 at 5–9].  In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including those that are severe and non-severe.  *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016).  A claimant's RFC is the most work the claimant can perform, not the least.  20 C.F.R. § 404.1545; SSR 83-10.  "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"  *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")).  The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.  *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ also must address medical source opinions.  *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015).  For applications filed after March 27, 2017, the Social Security regulations provide that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s)."  20 C.F.R. § 416.920c(a).  Instead, the Commissioner will consider the persuasiveness of medical source opinions and prior administrative medical findings using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict the medical opinion.  20 C.F.R. § 416.920c(c).

The regulations provide that supportability and consistency are the two "most important factors" in determining the persuasiveness of a medical opinion.  20 C.F.R. § 416.920c(b)(2).  While the ALJ must explain his approach to these two factors, he need not expound on the remaining three factors unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record.  *Id.* at §§ 416.920c(b)(2)–(3); *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021).  "[A] supportability inquiry examines how well a medical source supported and explained their opinion."  *S.P., v. Kilolo Kijakazi, acting Comm'r of Soc. Sec.*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) (citing *Vellone*, 2021 WL 319354, at *6); *see* 20 C.F.R. § 416.920c(c)(1).  "Consistency, on the other hand, is 'an all-encompassing inquiry' that focuses on how well a medical source opinion is supported, or not supported, by the entire record."  *Id.* (citation omitted); *see also* 20 C.F.R. § 416.920c(c)(2).

Here, with respect to his mental impairments, the ALJ determined that Plaintiff retained the RFC to

> perform simple and routine tasks, and he is not capable of complex judgment or analysis in the work place. He is able to maintain pace in a work environment of a simple and routine nature. He is able to frequently interact with supervisors and coworkers. He is able to occasionally interact with the public. Furthermore, he is able to adapt to routine changes in the workplace and that such changes do not require complex judgment or analysis in order for him to successfully make that adaptation.

[Doc. 14-2 at 22].  In making this assessment, the record before the ALJ included evidence from Plaintiff's function report, testimony from his hearing, medical records from St. Anthony and another disability determination physician, and the opinions of Dr. Graham and Dr. Frommelt.  *See* [Doc. 14-2 at 22–26]; *see also* [Doc. 14-7 at 268–72, 300, 449, 455; Doc. 14-6 at 228].

I find that the ALJ properly exercised his discretion and correctly applied the new regulations set forth in 20 C.F.R. § 416.920c in determining the persuasiveness of the medical opinions in relation to Plaintiff's RFC.  *See* [Doc. 14-2 at 25].  The ALJ considered the opinion of Dr. Graham, and determined that his opinion was persuasive and supported by the results of the corresponding consultative examination of Plaintiff, in which Plaintiff was able to "repeat six digits forward and four backward[]; spell the word 'world' correctly forward, but not backward; … perform a simply three-step command; recall[] one of three items after a 10 minute delay; and … perform serial sevens slowly."  [Doc. 14-2 at 26]; *see also* [Doc. 14-7 at 272].  The ALJ also found Dr. Graham's opinion to be consistent with Plaintiff's treatments records reflecting that Plaintiff "treated his mental health conditions with medication alone."  [Doc. 14-2 at 26].[5]  In

---

[5] The ALJ cites to Exhibit No. "B10F/9," but no such exhibit is included in the Administrative Record before the court.  *See* [Doc. 14-8 (containing only a portion of Exhibit No. "B8F" up to AR 588)].  This omission, however, does not affect the court's determination because (1) those records nevertheless appear to exist, as reflected in the Court Transcript Index, *compare* [Doc. 14-1 at 2–3 (reflecting an 891-page Administrative Record] *with* [Doc. 14-8 (with a last page of 588)]; (2) Plaintiff does not object to the veracity of the information in those records as cited in the ALJ's

addition, the ALJ considered the opinion of Dr. Frommelt, who opined that Plaintiff could follow simple instructions, sustain ordinary routines, make simple work-related decisions, respond appropriately to supervision and coworkers, and have minimal to no interaction with the public, among other findings.  [Doc. 14-2 at 25]; *see also* [Doc. 14-3 at 108–09].  The ALJ determined Dr. Frommelt's opinion to be "generally persuasive" and supported by Plaintiff's treatment records and consistent with the consultative examination performed by Dr. Graham.  [Doc. 14-2 at 25].[6]

The ALJ also considered Plaintiff's hearing testimony that he used to treat his mental conditions, but then tried to manage them through his faith; he does not react violently to things, but he does experience audio and visual hallucinations; he had not used methamphetamines the last year; he lives wherever he can find a place, including a shelter that he left and, at the time of the hearing, a friend's place in Arvada; and he recorded gospel music, people in the United Kingdom love his music, and, before he stopped recording, Plaintiff would spend time recording whenever he felt like it, typically every other day.  [Doc. 14-2 at 22–23].  Further, the ALJ considered Plaintiff's reports that he is able to independently care for himself, prepare meals, make his bed, read, watch television, shop in a convenience store, and attend church.  [Doc. 14-2 at 25 (citing "B4E/8; B3F/6")]; *see also* [Doc. 14-6 at 8; Doc. 14-7 at 6].  The ALJ found that, "[o]verall,

---

opinion; and (3) the information referenced by the ALJ that purportedly exists in Exhibit No. B10F—that Plaintiff "treated his mental health conditions with medication alone"—is not inconsistent with Plaintiff's testimony at the hearing that he previously received mental health treatment, but had recently been trying to manage his mental health issues through his faith.  [Doc. 14-2 at 45–46].  Moreover, (a) presuming the July 2011 to April 2014 dates of the medical records at Exhibit No. B10F are correct, *see* [Doc. 14-1 at 3], and (b) given Plaintiff's consultative examination was indeed conducted in August 2018—nearly three months *after* Plaintiff filed his application—the ALJ's reliance on those records indicates that the ALJ evaluated Plaintiff's mental impairments beginning at least four years before Plaintiff submitted his application through the date of his consultative examination thereafter.

[6]*See supra* n.5.

the record does not support the claimant's statements or greater limitations than those assessed in" Plaintiff's RFC.  [Doc. 14-2 at 25].

Plaintiff argues that he "provided sufficient evidence to suggest a reasonable probability that [] his mental health was impaired beyond a diagnosis of depression and anxiety." [Doc. 18 at 7].   This "sufficient evidence," according to Plaintiff, includes "evidence of his delusional thinking, hallucinations, paranoia, violent outbursts and irrational behavior."   [*Id.*].   However, Plaintiff fails to cite any records with respect to this assertion.  *See* [*id.*].  In any event, the records from Dr. Graham's consultative examination are not inconsistent with Plaintiff's subjective representations regarding the severity of his impairments.  Indeed, those records reflect Plaintiff's purported history of depression, hallucinations, paranoia, problems with memory and concentration, that Plaintiff "denie[d] having manic sorts of symptoms, except for mood swings," *see* [Doc. 14-7 at 269], and Dr. Graham opined that Plaintiff "would have a moderate impairment in social functioning, interacting with coworkers, supervisors, and the general public," [*id*. at 272]. Moreover, Plaintiff testified at the administrative hearing that he no longer experienced episodes where he would react to situations "with a lot of violence and volatility" in a way that other people would not typically react; and he continued to experience "a little bit" of audio and visual hallucinations.  [Doc. 14-2 at 46].

Further, Plaintiff does not dispute the evidentiary support cited by the ALJ in discounting Plaintiff's subjective complaints of disability, particularly in light of Plaintiff's conflicting statements concerning the intensity and limiting effects of his symptoms, *see* [Doc. 14-2 at 23–26].  *See* [Doc. 21 at 7–8].  The court therefore agrees with Defendant that the ALJ properly exercised his discretion in resolving any conflicting evidence by limiting plaintiff to unskilled work with limited social interaction, as supported by Dr. Graham's and Dr. Frommelt's findings.

It is the ALJ's responsibility to weigh the evidence before him, *see Guillar v. Commissioner*, 845 Fed. Appx. 715, 719 (10th Cir. 2021), and, as explained above, the ALJ correctly applied the regulations in determining the persuasiveness of those medical opinions and their consistency with other information in the administrative record.  Accordingly, I conclude that, after considering the facts and evidence, the ALJ's determination that Plaintiff's complaints of disability lack medical foundation is supported by substantial evidence.  *See id.* (noting that "[c]redibility is the province of the ALJ" (citation and quotations omitted)); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("Substantial evidence is more than a scintilla, but less than a preponderance.").  Because the ALJ's decision is supported by more than a scintilla of evidence, the court will not disturb his findings.  *See id.*; *see also Smith*, 821 F.3d at 1266 (stating the court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's").

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  January 12, 2022                             BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge